## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

ERICA WOLFE, on behalf of herself
and all others similarly situated,

               Plaintiff,

   v.

General Motors, LLC,

               Defendant.

Case No.:

Hon.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## PLAINTIFF'S CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Erica Wolfe brings this action against Defendant General Motors

LLC, ("Defendant" or "GM"), by and through her attorneys, individually and on

behalf of all others similarly situated, and alleges as follows:

## INTRODUCTION

1.    This is a class action lawsuit brought by Plaintiff on behalf of herself

and a class of current and former GM vehicle owners and lessees whose vehicles

suffer from a defective air conditioning system caused by the systemic failure of

the refrigerant hose that transmits refrigerant from the vehicles' compressor to the

condenser. The Class Vehicles include the following makes and models: 2015

Cadillac Escalade models, 2014-15 Chevrolet Silverado 1500 models, 2015

Chevrolet Suburban models, 2015 Chevrolet Tahoe models, 2014-15 GMC Sierra

1500 models, and 2015 GMC Yukon models (herein after referred to collectively as the "Class Vehicles").[1]

2.      This action arises from GM's fraudulent and misleading marketing and sale of Class Vehicles, which GM marketed and sold as including a properly functioning Air conditioning system suited for its intended purpose as an air conditioning system, despite knowing prior to sale that the Air conditioning system is defective and guaranteed to fail because of GM's failure to adequately secure the refrigerant hose, and failing to disclose those material facts to Plaintiff and Class members. As a result of the pressure the refrigerant hose is subjected to while the Air conditioning system is running, as well the vibration experienced during vehicle operation, the refrigerant hose eventually shakes loose, cracks, leaks and ultimately fails ("the AC Defect").

3.      Further, if the AC Defect, which is latent but present in all Class Vehicles at the time of sale and all times thereafter, manifests while the air conditioning system is in use, the air conditioning system will suddenly cease operation, which causes the compressor to seize and requires additional costly repairs.

4.      GM did not disclose the AC Defect's existence to prospective customers and actively concealed the AC Defect from Plaintiff and Class members

---

[1] Plaintiff reserves the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

at the time of sale. GM's knowledge of the AC Defect arose at least in October 2014, when it issued a Technical Service Bulletin ("TSB") advising its authorized dealers and service technicians of the AC Defect and a simple prophylactic solution: using a bracket to better secure the refrigerant hose to minimize vibration and the likelihood of failure.[2] But GM nevertheless chose to conceal from Class members that the components within the Air conditioning system are defective and would require costly repairs, and that the AC Defect would reduce the intrinsic and resale value of Class Vehicles.

5.    GM has been inundated with complaints from owners and lessees of the Class Vehicles concerning premature failure of the air conditioning system as a direct result of the AC Defect, but GM has elected to do nothing to protect the significant investment loyal Class members have made in Class Vehicles. Moreover, although a later TSB instructed authorized service technicians to inspect the refrigerant hose when performing vehicle maintenance, technicians were authorized to secure the hose only if the AC Defect had manifested, thereby ensuring that tens of thousands of Class Vehicles would manifest the AC Defect, and that owners of Class Vehicles would incur millions of dollars in repair costs as a result. *See* TSB PIE0340, attached as Exhibit A.

_____

[2] https://www.repairprocedures.com/service-bulletin/document/2015/cadillac/escalade-esv-2wd/preliminary-information/pit5331/100302829_7527571_2_82_0_3996395.html (last visited Aug. 24, 2017).

6.     When Class members with Vehicles that manifested the AC Defect bring in their Class Vehicles to GM's authorized technicians for repairs, regardless of warranty status, GM's authorized dealers routinely inform them that the parts required to repair the Vehicles are on backorder and unavailable. As a result, Class members are stuck with Class Vehicles without a properly functioning air conditioning system for weeks or months, including during the summer,

7.     For Class members who need a functioning air condition system immediately, they are forced to purchase aftermarket parts from a third party, which, according to authorized GM dealerships, prohibits them from participating in a recall campaign should GM ever decide to initiate one.

8.     The AC Defect poses a significant safety risk to the operator and passengers of Class Vehicles. When the AC Defect manifests—often suddenly and without warning—the air conditioning shuts off completely. For many Class members, the AC Defect manifests in the middle of Summer, when temperatures are at their highest. In many parts of the country, high temperatures can be dangerous to both the vehicle operator and their passengers. Thus, the AC Defect presents a serious safety concern because it subjects Class members and their guests to dangerously high temperatures without relief.

9.     The AC Defect also may cause in engine stalling, further endangering Class Vehicle occupants and operators. The AC compressor is powered by the

4

engine's accessory drive belt. If the compressor seizes while the air conditioning system is in operation, it can place strain on the drive belt (and thus, the Class Vehicles' drivetrain) which can cause sudden and unanticipated stalling while operating the Class Vehicle. This dramatically increases the likelihood of accident and injury for all those traveling in the Class Vehicle.

10.     In short, as a result of GM's unfair, deceptive, and/or fraudulent business practices, current and former owners and/or lessees of Class Vehicles, including Plaintiff, have suffered an ascertainable loss of money, property, and/or loss in value, as well as a significant risk to their safety. The unfair and deceptive trade practices committed by GM were conducted in a manner giving rise to substantial aggravating circumstances.

11.     Had Plaintiff and other Class members known about the AC Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles, or would have paid substantially less for them.

12.     Plaintiff and Class members would have avoided the significant out-of-pocket costs they incurred to repair their vehicles following manifestation of the AC Defect, or the lost use and enjoyment of their Class Vehicles while waiting for the parts needed to fix the AC Defect and repair their inoperative air conditioning systems.

13.     As such, Plaintiff brings this action to redress GM's violations of Florida's Deceptive and Unfair Trade Practices Act, and violations of the Magnuson-Moss Warranty Act, as well as fraud and unjust enrichment.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

15.     This Court has personal jurisdiction over Defendant because it has conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the districts of Michigan and throughout the United States.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district. Additionally, there are one or more authorized GM dealers within this district and Defendant has advertised in this district and have received substantial revenue and

profits from their sales and/or leasing of Class Vehicles in this district, including to Plaintiff and other members of the Class; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

## PARTIES

### Plaintiff Erica Wolfe

17.     Plaintiff Erica Wolfe is a citizen of the State of Florida, and currently resides in Wimauma, Florida.

18.     On or about April 30, 2016, Plaintiff purchased a 2015 Chevrolet Tahoe with approximately 34,000 miles on the odometer from Morse Cadillac Brandon, an authorized GM dealer in Brandon, Florida, for personal use. Plaintiff also purchased an extended warranty on the vehicle.

19.     Prior to purchasing his vehicle, Plaintiff test drove the vehicle, viewed advertisements for the vehicle and the vehicle's window sticker, and spoke with GM sales representatives concerning the vehicle's features. Neither the test drive, the advertisements, the window sticker nor the sales representatives disclosed or revealed that the Air conditioning system was defective and prone to premature failure.

20.     With only 70,000 miles on the odometer, Plaintiff had the Air conditioning system on her vehicle fail without warning.

7

21.     Plaintiff then brought her vehicle to Morse Cadillac Brandon, where the dealership diagnosed the problem as a leaking condenser. The dealership did not have the part and it took sixty days for them to receive it from GM. During this time, Plaintiff's vehicle sat at the dealership. GM also denied coverage for the repair under its warranty, forcing Plaintiff to use her extended warranty to cover the repair, which required Plaintiff to pay a deductible.

22.     One week later, the air conditioner in her vehicle failed again. She again took her vehicle to Morse Cadillac Brandon, and a technician informed her that the cause of the failure was a faulty hose. GM again denied coverage for the repairs under its warranty, forcing Plaintiff to use her extended warranty to cover the repair, which required Plaintiff pay another deductible.

23.     Neither Defendant nor its agents, dealers, or other representatives informed Plaintiff of the AC Defect's existence at any time either prior to or following her purchase.

24.     Plaintiff has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the AC Defect, including, but not limited to, out of pocket cost to pay for repair of the AC Defect and the diminished value of her vehicle. Had Defendant disclosed the AC Defect to Plaintiff, she would not have bought her vehicle or would have paid less for it.

**The Defendant**

25.     Defendant General Motors, LLC is a limited liability company organized under Delaware law with its principal office located at 300 Renaissance Center, Detroit, Michigan 48265. GM is an automobile design, manufacturing, distribution, and service corporation doing business throughout the United States. GM, through its various entities, designs, develops, manufactures, distributes, markets, sells, leases, warrants, services, and repairs passenger vehicles throughout all fifty States under several prominent brand names, including but not limited to Chevrolet, Buick, GMC, GM, and Pontiac.

26.     GM sells vehicles through a network of authorized dealerships that are the agents of GM, and under extensive control of GM.

## TOLLING OF STATUTES OF LIMITATIONS

27.     Any applicable statute(s) of limitations have been tolled by GM's knowing and active concealment and denial of the facts alleged herein. Plaintiff and the members of the Class could not have reasonably discovered the true, latent nature of the AC Defect until shortly before this class action litigation was commenced.

28.     GM was and remains under a continuing duty to disclose to Plaintiff and the members of the Class the true character, quality and nature of the Class

Vehicles, that the AC Defect results from a poor design and/or failures in the manufacturing process, will require costly repairs, poses safety concerns, and diminishes the resale value of the Class Vehicles, in addition to causing Class members to pay out of pocket costs to repair their Vehicles. As a result of GM's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

### A.    The AC Defect within Class Vehicles.

29.    GM is a multinational corporation with hundreds of thousands of employees worldwide.

30.    Since 2013, GM has manufactured, distributed, marketed, sold and warranted various models of trucks and SUVs built on a single vehicle platform, referred to internally as GMT K2XX vehicles. GMT K2XX vehicles include the Class Vehicles.

31.    Before GM began designing and manufacturing Class Vehicles, all passenger vehicles sold in the United States, including GM vehicles, have come with air conditioning systems as a standard item in order to cool cars (and their occupants) in hot weather. *See* Window Sticker for 2014 GMC Sierra, attached as Exhibit B.

32.     The air conditioning systems designed and manufactured by GM all have a hose that connects the compressor to the condenser in the vehicle, and transfers coolant, which helps provide cool air throughout the vehicle.

33.     The connecting hose, referred to sometimes as the "refrigerant hose," is the high pressure side hose and undergoes approximately 350 psi of pressure when the air conditioning is running, in addition to excessive vibration and jostling during normal vehicle operation. If the hose cracks, it could leak coolant – necessary for the continued working of the air conditioning system.

34.     If the hose is not properly restrained, one of the crimped metal fittings on the hose end may crack and leak due to the constant flexing of the hose in that location.

35.     Additionally, if the hose cracks, it could spray oil and refrigerant onto the air conditioning compressor, making the source of the leak difficult to identify.

36.     In order to repair this damage and the air conditioning function, customers must replace the refrigerant hose and then install a line bracket to properly restrain the hose:



37.     After completing these repairs, customers must then recharge the refrigerant system and perform a leak test to verify proper operation.

38.     In other cases, the Class Vehicles' condensers are too weak to hold the pressure of the coolant, causing a leak at the neck of the condensers, where high-pressure gas enters.

39.     In defective Class Vehicles, the refrigerant hose and the condenser are too weak and too poorly designed and/or manufactured to withstand the pressure caused by the coolant.

40.     For those customers whose Class Vehicles experience the AC Defect and are outside of their warranty, it can cost from $200 to $2500 to return the Air conditioning system to working order. Conversely, GM could have installed line brackets when performing routine maintenance while the vehicles were within GM's new vehicle warranty period, thereby saving its customers thousands of dollars.

12

41.     Air conditioning systems in the Class Vehicles are designed to function for periods and mileages substantially in excess of those specified in Defendant's warranties. Customers justifiably expect to enjoy the use of an automobile air conditioning system will fail for significantly longer than the limited times and mileages identified in Defendant's warranties.

42.     Due to the fact that the parts affected by the AC Defect are internal, mechanical components and the failure manifests suddenly and without warning, Plaintiff and Class members have no warning that the AC Defect has manifested until it causes a complete failure of the Air conditioning system.

## B.     GM's Knowledge of the AC Defect

43.     TSB 5331, a TSB detailing an issue with low air conditioning refrigerant level as a result of an issue with the refrigerant hose connecting the compressor to the condenser, was issued by GM on October 6, 2014. TSBs are typically issued long after a manufacturer acquires knowledge of a defect. This suggests that GM learned of the AC Defect during pre-release testing or shortly after it placed the first Class Vehicles into the stream of commerce.[3]

---

[3] *See* https://www.repairprocedures.com/service-bulletin/document/2015/cadillac/escalade-esv-2wd/preliminary-information/pit5331/100302829_7527571_2_82_0_3996395.html (last visited Aug. 24, 2017).

44.     This issue, and TSB 5331, was highlighted in the 2014 meeting notes of the Cadillac National Service Managers Council. *See* p. 23 of <u>Exhibit C</u>. The subject notes, under the subheading of "Escalade," acknowledge TSB 5331, and note that there is an air conditioning leak "from [the] Compressor to condenser high side line." *Id.*

45.     Later, GM issued TSB PIE0340 on May 29, 2015 detailing "A/C Inoperative or Poor Performance on Recent Built Vehicles" for all models of the 2015 Cadillac Escalade, 2015 Chevrolet Silverado 1500, 2015 Chevrolet Suburban, 2015 Chevrolet Tahoe, 2015 GMC Sierra 1500, and 2015 GMC Yukon. *See* <u>Exhibit A</u>.

46.     GM has knowledge of these issues, not only because of the complaints made to GM and its authorized dealerships, but also due to the numerous complaints made online. These complaints, some of which are included below, demonstrate GM's knowledge of the AC Defect and its potential danger.

47.     A brief sampling of the customer complaints related to the AC Defect are included below (all typographical, grammar, and spelling errors are attributable to the original author of the complaint):

2015 Tahoe – a/c condenser is cracked. Nationwide back order for part and no idea when I might get my truck back. In the meantime, the loaner they have available is a Camaro. Sounds nice, and I'm thankful to have

something to drive in the interim, but with a family of 5 and a husband who is 6'9", it definitely is not practical or comfortable.[4]

\*\*\*

Purchased new model Chevy Tahoe 3 years ago and A/C not working. I live in the northeast and only use the AC 6 months/year. Was told the part is on back-order for at least 10 weeks – due to the number of 2015 Chevy Tahoes with this same issue that need the part. This is obviously a company wide issue that needs to be addressed since 2015 was the brand new model for the Tahoe. Was told the part will be over $2000 (on a 3 year old car!!!). Hoping my dealer goes to bat for me w/ GM and I get reimbursed for the part. But even with that I will have to wait until the summer to get the part and will have NO A/C. This is my 3rd and last GM car for sure.[5]

\*\*\*

I've owned this vehicle for 4 months and it's the biggest POS I've ever purchased!! It's in the shop constantly with different things going on. I've HAD IT!! I want this car replaced!!!!!! DO NOT waste your hard earned money on this POS SUV!!!.[6]

\*\*\*

I have had several issues with my 2015 Tahoe, but the AC not working is awful. I paid over $50,000 for this truck, I should not have major repairs like this one.[7]

\*\*\*

I live in Texas. Coming home from a family camping trip the AC stopped working! It was miserable! Summer heat with 5 boys in the car, for four hours![8]

\*\*\*

---

[4] *See* http://www.carcomplaints.com/Chevrolet/Tahoe/2015/AC_heater/ac_stopped_working.shtml, by "emwrlw, Wimauma, US" on June 2, 2017 (last visited Aug. 21, 2017).

[5] *Id*. by "Mj C., St Davids, US" on March 22, 2017.

[6] *Id*. by "Shannon E., Sour Lake, TX, USA" on May 20, 2015.

[7] *Id*. by "Becky G., Mulvane, KS, USA" on June 22, 2015.

[8] *Id*. by "Carmen V., Pearland, TX, US" on July 19, 2014.

Purchased 2015 chevy Tahoe ltz new, 3 years ago. Air conditioning not working and told it needs a condenser. Part is on back order with no delivery date available due to the high number of 2015 Tahoes that are waiting for this part. Went online to see if anyone else is having this problem with the same make/model/year and the number is astonishing. This was a brand new model and first year offered from chevy so there is obviously a manufacturing issue. Car warranty is expired and was told part would be over $2000![9]

***

My AC conditions developed a pin hole leak along the seam/braze. The AC Delco condenser lasted just long enough to get me through the warranty period. I thought it was the AC to condenser line, but not the case, despite my truck not coming with the bracket that GM started adding to later models (thanks beta testers). The stealership quoted $1k to fix it…not happening. Has anyone DIY'd a condenser replacement? Does the drier need to be replaced as well? Any recommendations on alternative condenser brands? Don't want to replace it with an equally inferior condenser.[10]

***

A/C compressor popped yesterday. 2014 Sierra with only 56,000 miles on her. Truck bogged down and almost died while backing out of a parking spot. Looked under the hood and saw the wheel on the compressor was looking sketchy and noticed a white residue that somehow got sprayed around the engine compartment. Took it to the dealer and the service rep said he could pull some strings at GMC and get it replaced for $200. Said they have the part in stock, but I'm not feeling too optimistic after reading all the other complaints.[11]

***

---

[9] *See* http://www.carproblemzoo.com/chevrolet/tahoe/air-conditioner-problems.php, failure date of 03/22/2017 (last visited Aug. 24, 2017).

[10] *See* http://www.gm-trucks.com/forums/topic/191974-ac-condenser-replacement/, by "Enthusiast" on September 17, 2016 at 03:34 PM.

[11] *See* http://www.carcomplaints.com/GMC/Sierra_1500/2014/AC_heater/AC_not_working.shtml by "jadair80, Bakersfield, US" on July 25, 2017 (last visited Aug. 24, 2017).

This is the first issue of three concerning the cooling system I have experienced. I understand GM is aware of the faulty design as this issue is widespread on this model. GM has since created a bracket to prevent the hose from failing however, no recall has been executed.[12]

\*\*\*

Dealer mentioned that this is a common problem, I am yet to see anything from the manufacturer.[13]

\*\*\*

Truck less than 2 year old and already had to replace the AC.[14]

48.    GM has also responded to complaints made on their own website,

further solidifying its longstanding awareness of the AC Defect and its effect on

consumers:

---

[12] *Id*. by "]jrdavenp, Tullahoma, US" on March 2, 2016.

[13] *Id*. by "Edgardo C., Jacksonville, FL, USA" on September 15, 2015.

[14] *Id*. by "Ted. S., Bedford, IN, USA" on July 17, 2015.



49.     GM also is experienced in the design and manufacture of consumer

vehicles, and likely conducts pre- and post-release testing on its components,

including the refrigerant hose and compressor for the Class Vehicles. These tests

are designed to verify that the parts are not defective and comply with GM's

internal specifications. Thus, GM knew – or should have known – that the

refrigerant hose and compressor used in Class Vehicles were defective and likely

to cause premature failure in the air conditioning systems, costing Plaintiff and Class members thousands of dollars in repairs.

50.     GM also knew or should have known about the AC Defect through its own internal records. This is because of the high number of replacement parts likely ordered from GM by authorized GM dealers to repair the AC Defect. Upon information and belief, all GM service centers are required to order replacement parts, including replacements for the air conditioning system, directly from GM. Furthermore, independent vehicle repair shops that service Class Vehicles also order replacement original equipment manufacturer (referred to as "OEM") parts directly from GM. As such, the sudden increase in orders refrigerant hoses, compressors, and line brackets used in the Class Vehicles was known to GM, and either did or should have alerted them to the scope and severity of the AC Defect in the Class Vehicles.

51.     The timing of the these complaints, when considered in conjunction with the other means through which GM monitors the performance of its vehicles in the field, clearly establishes that GM had knowledge of the AC Defect prior to the time of sale of all of the Class Vehicles.

## CLASS ALLEGATIONS

52.     Plaintiff brings this action on her own behalf, and on behalf of a nationwide class pursuant to Federal Rule of Civil Procedure, Rule 23(a), 23(b)(2),

and/or 23(b)(3).

> ### Nationwide Class:
>
> All persons or entities in the United States who are
> current or former owners and/or lessees of a Class
> Vehicle.

53.     In the alternative to the Nationwide Class, and pursuant to Federal

Rule of Civil Procedure, Rule 23(c)(5), Plaintiff seeks to represent the following

Florida class in the event that the Court declines to certify the Nationwide Class:

> ### Florida Class
>
> All persons or entities in Florida who are current or
> former owners and/or lessees of a Class Vehicle.

54.     The Nationwide Class and the Florida Class shall be collectively

referred to herein as the "Class." Excluded from the Class are Defendant, its

affiliates, employees, officers and directors, persons or entities that purchased the

Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiff reserves

the right to modify, change, or expand the various class definitions set forth above

based on discovery and further investigation.

55.     Certification of Plaintiff's claims for class-wide treatment is

appropriate because Plaintiff can prove the elements of her claims on a class-wide

basis using the same evidence as would be used to prove those elements in

individual actions alleging the same claim.

56.    Numerosity: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. Plaintiff believes, and on that basis allege, that hundreds of thousands of Class Vehicles have been sold and leased in each of the States that are the subject of the Class.[15]

57.    Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

   a.   Whether Defendant engaged in the conduct alleged herein;

   b.   Whether Defendant designed, manufactured, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

   c.   When Defendant learned of the AC Defect;

   d.   Whether Defendant knew of the AC Defect, yet failed to disclose the problem and its consequences to its customers;

   e.   Whether a reasonable consumer would consider the AC Defect or its consequences to be material

   f.   Whether Defendant has failed to provide free repairs as required by its warranties;

   g.   Whether Plaintiff and other Class members have been harmed by the fraud alleged herein;

---

[15] Plaintiffs have determined that approximately 4,238,775 Class Vehicles were sold by GM between 2012 and 2016.

h.  Whether Defendant was unjustly enriched by its deceptive practices; and

i.  Whether Plaintiff and members of the Class are entitled to equitable relief in the form of rescission of the purchase agreement or other injunctive relief and, if so, in what amount.

58.  <u>Typicality</u>: All of the Plaintiff's claims are typical of the claims of the Class since Plaintiff purchased a Class Vehicle with the AC Defect, as did each member of the Class. Furthermore, Plaintiff and all members of the Class suffered monetary and economic injuries arising out of GM's wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class members.

59.  <u>Adequacy</u>: Plaintiff is an adequate representative because her interests do not conflict with the interests of the Class that she seeks to represent, she has retained counsel competent and highly experienced in complex class action litigation, and she intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

60.  <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation resulting from GM's conduct. It would be virtually impossible for members of the Class individually to redress effectively GM"s

misconduct. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, GM's vehicle identification numbers, warranty claims, registration records, and database of complaints.

61.     GM has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## FIRST CAUSE OF ACTION

### VIOLATIONS OF THE FLORIDA DECEPTIVE
### AND UNFAIR TRADE PRACTICES ACT
### Fla. Stat. § 501.201, *et seq.*
### (On Behalf of the Florida Class)

62.     Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

63.     The purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is "to protect the consuming public and legitimate business

enterprises from those who engage in unfair methods of competition, or

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or

commerce." FLA. STAT. § 501.202 (2).

64.    The actions of Defendant, as set forth above, occurred in the conduct

of trade or commerce.

65.    In the course of Defendant's business, they willfully failed to disclose

the dangerous risk of the AC Defect in the Class Vehicles as described above.

Defendant also actively concealed the AC Defect by failing to inform customers of

the AC Defect well after it was originally known. Accordingly, Defendant engaged

in unfair and deceptive acts or practices.

66.    Defendant should have disclosed this information because it was in a

superior position to know the true facts related to the AC Defect, and Plaintiff and

Class members could not reasonably be expected to learn or discover the true facts

related to this Defect. Defendant, by the conduct, statements, and omissions

described above, also knowingly and intentionally concealed from Plaintiff and the

Class members that Class Vehicles suffer from the AC Defect (and the costs,

safety risks, and diminished value of the vehicles as a result of this problem).

67.    Defendant knowingly misrepresented the Class Vehicles as fit to be

used for the purpose for which they were intended, when, in fact, Defendant knew

the Class Vehicles were defective, dangerous, and not what was advertised. Indeed,

Defendant misrepresented the Air conditioning systems in the Class Vehicles as functional and suited for their intended purpose, when, in fact, they were not.

68.     These acts and practices have deceived Plaintiff and are likely to, and did, deceive the public. In failing to disclose the AC Defect and suppressing material facts from Plaintiff and the Class members, Defendant breached its duties to disclose these facts, violated the FDUTPA, and caused injuries to Plaintiff and the Class members. The omissions and acts of concealment by Defendant pertained to information that was material to Plaintiff and Class members, as it would have been to all reasonable consumers.

69.     The injuries suffered by Plaintiff and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class members should have reasonably avoided.

70.     Defendant's conduct proximately caused injuries to Plaintiff and other Class members. Had Plaintiff and the Class known about the AC Defective nature of the Class Vehicles, they would not have purchased the Class Vehicles, would have paid less for them or would have avoided the extensive repair costs associated therewith.

## SECOND CAUSE OF ACTION
## BREACH OF WRITTEN WARRANTY UNDER THE
## MAGNUSON-MOSS WARRANTY ACT
### (On Behalf of the Nationwide Class, or Alternatively, the Florida Class)

71.     Plaintiff and the Class incorporate by reference each preceding and

succeeding paragraph as though fully set forth at length herein.

72.     Plaintiff and the Class members are "consumers" within the meaning

of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

73.     Defendant is a "supplier" and "warrantor" within the meaning of 15

U.S.C. §§ 2301(4)-(5).

74.     The Class Vehicles are "consumer products" within the meaning of 15

U.S.C. § 2301(1).

75.     Defendant's warranties are "written warranties" within the meaning of

15 U.S.C. § 2301(6).

76.     Defendant breached the express warranties by:

    a.  Providing a 3 year/36,000 miles New Vehicle Limited Warranty and a

        Service Parts Warranty with the purchase or lease of the Class

        Vehicles, thereby warranting to repair or replace any part defective in

        material or workmanship at no cost to the owner or lessee;

    b.  Selling and leasing Class Vehicles with the A/C Defect and thus were

        defective in materials and/or workmanship, requiring repair or

        replacement within the warranty period; and

26

c.   Refusing and/or failing to honor the express warranties by repairing or

replacing, free of charge, the A/C Defect.

77.   Plaintiff and the other Class members relied on the existence and

length of the express warranties in deciding whether to purchase or lease the Class

Vehicles.

78.   Defendant's breach of the express warranties has deprived Plaintiff

and the other Class members of the benefit of their bargain.

79.   The amount in controversy of Plaintiff's individual claims meets or

exceeds the sum or value of $25.00. In addition, the amount in controversy meets

or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed

on the basis of all claims to be determined in this suit.

80.   Defendant has been afforded a reasonable opportunity to cure its

breach of the written warranties and/or Plaintiff and the other Class members were

not required to do so because providing Defendant a reasonable opportunity to cure

its breach of written warranties would have been futile. Defendant was also on

notice of the AC Defect from the complaints and service requests it received from

Class members, as well as from its own warranty claims, customer complaint data,

and/or parts sales data.

81.   As a direct and proximate cause of Defendant's breach of the written

warranties, Plaintiff and the other Class members sustained damages and other

losses in an amount to be determined at trial. Defendant's conduct damaged

Plaintiff and the other Class members, who are entitled to recover actual damages,

consequential damages, specific performance, diminution in value, costs, including

statutory attorney fees, and/or other relief as deemed appropriate. \

**THIRD CAUSE OF ACTION**
**FRAUD**
**(On Behalf of the Nationwide Class or, Alternatively, the Florida Class)**

82.     Plaintiff incorporates by reference all allegations of the preceding

paragraphs as though fully set forth herein.

83.     Plaintiff brings this cause of action on behalf of herself and on behalf

of the members of the Class against Defendant.

84.     Defendant's misrepresentations, nondisclosures, and/or concealment

of material facts to Plaintiff and the members of the Class, as set forth above, were

known, or through reasonable care should have been known, by Defendant to be

false and material and were intended to mislead Plaintiff and the members of the

Class.

85.     Plaintiff and the Class were actually misled and deceived and were

induced by Defendant to purchase the Class Vehicles which they would not

otherwise have purchased, or have paid substantially less for.

86.     As a result of Defendant's conduct, Plaintiff and the Class members

have been damaged

28

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT
**(On Behalf of the Nationwide Class or, Alternatively, the Florida Class)**

87.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

88.     Plaintiff bring this cause of action on behalf of herself and on behalf of the members of the Class against Defendant.

89.     Plaintiff and members of the Class conferred a benefit on Defendant by purchasing or leasing the Class Vehicles.

90.     Defendant had knowledge that this benefit was conferred upon them.

91.     Defendant has been unjustly enriched at the expense of Plaintiff, and its retention of this benefit under the circumstances would be inequitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and members of the Class, respectfully requests that this Court:

A. determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B. appoint Plaintiff as the representative of the Class and her counsel as Class counsel;

C.  award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiff and the Class members are entitled;

D.  award pre-judgment and post-judgment interest on such monetary relief;

E.  grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class members with appropriate curative notice regarding the existence and cause of the AC Defect;

F.  award reasonable attorneys' fees and costs; and

G.  grant such further relief that this Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: August 25, 2017                Respectfully submitted,

By:   */s/ E. Powell Miller*
      E. Powell Miller (P39487)
      Sharon Almonrode (P33938)
      **THE MILLER LAW FIRM, P.C.**
      950 W University Dr., Suite 300
      Rochester, MI 48307
      Telephone: (248) 841-2200
      epm@millerlawpc.com
      ssa@millerlawpc.com

Joseph G. Sauder*
Matthew D. Schelkopf
Joseph B. Kenney
**McCune Wright Arevalo LLP**
555 Lancaster Avenue
Berwyn, PA 19312
Phone: (610) 200-0580
Facsimile: (610) 727-4360
jgs@Mccunewright.com
mds@mccunewright.com
jbk@mccunewright.com

Shanon J. Carson*
Glen L. Abramson*
**BERGER & MONTAGUE, P.C.**
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
scarson@bm.net
gabramson@bm.net

Kevin Page*
Cummings & Page, LLP
16 Studio Hill Road
Briarcliff Manor, NY 10510
Telephone (914) 821-6400
Fax: (914) 821-6444
kevin@candplaw.com

*pro hac vice applications to be submitted*

**Counsel for Plaintiff and the Putative Class**